# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
INFORMATION THAT IS STORED AT PREMISES )  Case No. 3:21MJ167
CONTROLLED BY SPRINT )
)

## APPLICATION FOR A SEARCH WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A. This court has authority to issue this warrant under 18 U.S.C. sections 2703(c)(1)(A) and 2711(3)(A) and Federal Rule of Criminal Procedure 41.

located in the _____ District of ____Kansas____ , there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. section 249(a)(1) | Hate crimes act |

The application is based on these facts:
SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*GVogt*
Applicant's signature

SA GABRIELLA VOGT, FBI
Printed name and title

Sworn to before me and signed in my presence via facsimile.  Telephone

Date: 5/3/21

*Sharon L. Ovington*
Judge's signature

City and state: Dayton, Ohio
United States Magistrate Judge
Printed name and title

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INORMATION ASSOCIATED WITH PARTICULAR CELLULAR TOWERS | Case No. 3:21MJ167<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Gabriella Vogt, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a warrant for records and information associated with certain cellular towers ("cell towers") that is in the possession, custody, and/or control of Verizon, T-Mobile, Sprint and AT&T (the "wireless provider(s)"). Verizon is a cellular service provider headquartered in Bedmister, New Jersey; T-Mobile is a cellular service provider headquartered in Bellevue, Washington; Sprint is a cellular service provider headquartered in Overland Park, Kansas; AT&T is a cellular service provider headquartered in Dallas, Texas.

2. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require Verizon, T-Mobile, Sprint and AT&T to disclose to the government the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

3. I am a Special Agent of the Federal Bureau of Investigation ("FBI") and have been so employed since September 2019. I am currently assigned to the Dayton Resident

Agency of the Cincinnati Field Division. I presently am assigned to work a variety of criminal violations, including the investigation of public corruption, white-collar crimes, money laundering, violent crimes and major offenses such as federal bank robberies and the apprehension of federal fugitives. I have also had experience investigating and apprehending individuals that are subject to narcotics trafficking investigations. Prior to my employment with the FBI, from June 2018 through September 2019, I was a General Engineer with the Department of Defense, Defense Contract Management Agency.

4. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C § 249(a)(1) have been committed and have been committed by UNKNOWN PERSON/S. There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

## PROBABLE CAUSE

6. The United States is investigating a hate crime that occurred on January 26, 2021 and February 25, 2021, at 4770 Airway Road, Riverside, OH 45431. The investigation concerns possible violations of 18 U.S.C § 249(a)(1).

7. The building at 4770 Airway Road, Riverside, OH 45431 houses two businesses: International Foods, and Xuan Vietnamese Cuisine. International Foods is a food market which sells international food and grocery items, focusing on Asian food. The owner of International Foods, hereinafter referred to as **VICTIM 1**, is of Asian - Vietnamese descent. Xuan

2

Vietnamese Cuisine is a restaurant which serves Vietnamese and Thai food. Xuan Vietnamese Cuisine is owned by **VICTIM 2** and his family. **VICTIM 2** is of Asian - Thai descent.

8. On January 26, 2021, Riverside Police Department (RPD) and Riverside Fire Department (RFD) responded to International Foods, located at 4770 Airway Road, Riverside, OH 45431, as the business had been vandalized and an attempted arson had taken place. The owner of the business, **VICTIM 1**, told a RPD Officer that there was a smell of gasoline in the business all day. The RPD Officer discovered a clear plastic bottle inside a small hole near the vent hood of the building. The clear plastic bottle had a light yellow liquid inside and had an odor of gasoline. **VICTIM 1** also discovered that **VICTIM 1's** delivery truck and the west side of **VICTIM 1's** building had been spray painted in black paint. **VICTIM 1's** delivery truck specifically had spray painting saying; "China Virus" and "Fuck China". The side of the building was spray painted saying; "Fuck U China Virus". **VICTIM 1** had video of the incident that occurred outside that was captured on **VICTIM 1's** rear exterior camera at 0216 hours. The video depicted two males climbing the ladder on the south side of the building. The two males climbed the ladder to get close to the camera, in order to cover the security camera with black spray paint.

9. On February 25, 2021, a RPD Officer and the RFD responded to International Foods for suspicious smoke coming from the roof of the business. The RFD Chief responded to the scene as the arson investigator. The RFD Chief investigated the rooftop area of the business, where the majority of damage occurred. The RFD Chief believed that the suspect likely poured an accelerant through a hole in the roof or the pipe chase. The RFD Chief determined that the fire likely smoldered for several hours and could have been started between 0000-0100 hours. The RFD Chief collected samples of wood and insulation around the point of origin and sent

those samples to the lab to test for the presence of accelerants. **VICTIM 1** advised that the alarm keypad for the business had recently been damaged as it no longer had power. It is unknown if the damage, to the alarm keypad, was from the fire or the wires of the alarm system were cut by the suspect/s.

10. On March 11, 2021, the RFD Chief and arson investigator determined that there was an accelerant located within the evidence seized during the February fire at International Foods. The RFD Chief stated that the accelerant was gasoline and that the fire was set intentionally.

11. In my training and experience, I have learned that Verizon, T-Mobile, Sprint and AT&T are companies that provides cellular communications service to the general public. In order to provide this service, many cellular service providers maintain antenna towers ("cell towers") that serve and provide cellular service to devices that are within range of the tower's signals. Each cell tower receives signals from wireless devices, such as cellular phones, in its general vicinity. By communicating with a cell tower, a wireless device can transmit and receive communications, such as phone calls, text messages, and other data. When sending or receiving communications, a cellular device does not always utilize the cell tower that is closest to it.

12. Based on my training and experience, I also know that each cellular device is identified by one or more unique identifiers. For example, with respect to a cellular phone, the phone will be assigned both a unique telephone number but also one or more other identifiers such as an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The

types of identifiers assigned to a given cellular device are dependent on the device and the cellular network on which it operates.

13. Based on my training and experience, I know that cellular providers, such as Verizon, T-Mobile, Sprint and AT&T, routinely and in their regular course of business maintain historical records that allow them to determine which wireless devices used cellular towers on the cellular provider's network to send or receive communications. For each communication sent or received via the wireless provider's network, these records may include: (1) the telephone call number and unique identifiers of the wireless device that connected to the provider's cellular tower and sent or received the communication ("the locally served wireless device"); (2) the cellular tower(s) on the provider's network, as well as the "sector" (*i.e.*, face of the tower), to which the locally served wireless device connected when sending or receiving the communication; and (3) the date, time, and duration of the communication. These records may also include the source and destination telephone numbers associated with the communication (including the number of the telephone that was called or that called the locally served wireless device) and the type of communication (e.g., phone call or SMS text message) that was transmitted.] On April 6, 2021, the United States sent preservation letters pursuant to 18 U.S.C. § 2703(f) to Verizon, T-Mobile, Sprint and AT&T that requested the providers preserve the data identified in Attachment A.

14. Based on my training and experience, I know that cellular providers, such as Verizon, T-Mobile, Sprint and AT&T, have the ability to query their historical records to determine which cellular device(s) connected to a particular cellular tower during a given period of time and to produce the information described above. I also know that cellular providers have

the ability to determine which cellular tower(s) provided coverage to a given location at a particular time,

15. Based on my training and experience and the above facts, information obtained from cellular service providers such as Verizon, T-Mobile, Sprint and AT&T that reveals which devices used a particular cell tower (and, where applicable, sector) to engage in particular communications can be used to show that such devices were in the general vicinity of the cell tower at the time the communication occurred. Thus, the records described in Attachment A will identify the cellular devices that were in the vicinity of 4770 Airway Road, Riverside, Ohio 45431 at the time during the identified in Attachment A. This information, in turn, will assist law enforcement in determining which person(s) were present around the time the incidents occurred at 4770 Airway Road, Riverside, Ohio 45431 on January 26, 2021 and February 25, 2021, respectively.

16. This process furthers efficiency and privacy by allowing for the possibility that the government, upon reviewing contextual information for all devices identified by Verizon, T-Mobile, Sprint and AT&T (and the associated basic subscriber information) are likely to be of heightened evidentiary value and warrant further investigation before the records of other accounts in use in the area are disclosed to the government.

## AUTHORIZATION REQUEST

17. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c).

18. I further request that the Court direct Verizon, T-Mobile, Sprint and AT&T to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on Verizon, T-Mobile,

Sprint and AT&T, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

19. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

Respectfully submitted,

*GVogt*

Gabriella L Vogt
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on ___5/3/21___, 20X̶

*Sharon L Ov[ington]*

Sharon L. Ovington
United States Magistrate Judge

7

## ATTACHMENT A

### Property to Be Searched

Records and information associated with communications to and from the following cellular antenna towers ("cell towers") on the identified date(s) and timeframe(s) that are within the possession, custody, or control of the cellular service provider(s) identified below:

| Cell Towers | Dates | Times |
|---|---|---|
| The cell towers that provided cellular service to 4770 Airway Road, Riverside, OH 45431 or | 1/26/21 | 0200 to 0230 & 0330 to 0400 (EST) |
| The cell towers that provided cellular service to 4770 Airway Road, Riverside, OH 45431 | 2/25/21 | 2330 to 0130 & 0330 to 0400 (EST) |

The following cellular service provider(s) are required to disclose information to the United States pursuant to this warrant:

1. Verizon a cellular service provider headquartered in Bedmister, New Jersey.
2. T-Mobile a cellular service provider headquartered in Bellevue, Washington.
3. Sprint a cellular service provider headquartered in Overland Park, Kansas.
4. AT&T a cellular service provider headquartered in Dallas, Texas.

## ATTACHMENT B

### Particular Things to be Seized

### I. Information to be Disclosed by the Provider

For each cell tower in described in Attachment A, the cellular service providers identified in Attachment A are required to disclose to the United States all records and other information (not including the contents of communications) about all communications made using the cell tower during the corresponding timeframe(s) listed in Attachment A, including records that identify:

- a. the telephone call number and unique identifiers for each wireless device in the vicinity of the cell tower ("the locally served wireless device") that registered with the cell tower, including Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), and International Mobile Equipment Identities ("IMEI");
- b. the source and destination telephone numbers associated with each communication (including the number of the locally served wireless device and the number of the telephone that transmitted a communication to, or to which a communication was transmitted by, the locally served wireless device);
- c. the date, time, and duration of each communication;
- d. for each communication, the "sector(s)" (i.e. the face(s) of the tower(s)) that received a radio signal from the locally served wireless device; and

2

    e. the type of the communication transmitted through the tower (such as phone call or text message).

These records should include records about communications that were initiated before or terminated after the timeframe(s) identified in Attachment A if some part of the communication occurred during the relevant timeframe(s) listed in Attachment A.

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 18 U.S.C § 249(a)(1) during the period of January 26, 2021 and February 25, 2021.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.